**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATIONWIDE AGRIBUSINESS** | ) | |
| **INSURANCE COMPANY,** | ) | **CIVIL ACTION NO.  20-2892** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE** |
| **v.** | ) | |
| | ) | |
| **SMITTY'S SUPPLY, INC, CAM2** | ) | **MAGISTRATE** |
| **INTERNATIONAL, LLC, and TRACTOR** | ) | |
| **SUPPLY COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY ("Nationwide"), by and through its attorneys, Jay Sever of Phelps Dunbar, LLC, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 against Smitty's Supply, Inc. ("Smitty's"), CAM2 International, LLC ("Cam2"), and Tractor Supply Company ("Tractor Supply"), (collectively "Defendants"), states as follows:

## INTRODUCTION

1.      In this declaratory judgment action, Nationwide contends it owes no obligation for certain claims arising from Defendants' misrepresentations and breaches of warranties involving the sale of alleged defective 303 tractor hydraulic fluid.

2.      Nationwide seeks a declaration as to its rights and obligations under certain insurance policies issued to two Louisiana insureds, with respect to the following lawsuits:

a.      *IN RE: Smitty's/Cam2 303 Tractor Hydraulic Fluid Marketing Sales Practices, and Products Liability Litigation*, MDL No. 2936, No. 4:20-md-02936 – SRB (W.D. Mo.) ("MDL Action");

b.      *Zornes, et al. v. Smitty's Supply, Inc., et al.*, No. 19-cv-2257-JAR-TJJ (D. Kan.) ("*Zornes* Action");

c.      *Wurth, et al. v. Smitty's Supply, Inc., et al.*, No. 19-cv-00092-TBR (W.D. Kent.) ("*Wurth* Action");

d.      *Buford v. Smitty's Supply, Inc., et al.*, No. 1:19-cv-00082-BRW (E.D. Ark.) ("*Buford* Action");

e.      *Mabie v. Smitty's Supply, Inc., et al.*, No. 4:19-cv-03308 (S.D. Tex.) ("*Mabie* Action");

f.      *Blackmore, et al. v. Smitty's Supply, Inc., et al.*, No. 5:19-cv-04052 (N.D. Iowa) ("*Blackmore* Action");

g.      *Fosdick, et al. v. Smitty's Supply, Inc., et al.*, No. 2:19-cv-01850-MCE-DMC (E.D. Cal.) ("*Fodsick* Action");

h.      *Klingenberg v. Smitty's Supply, Inc., et al.*, No. 19-cv-2684-ECT/ECW (D. Minn.) ("*Klingenberg* Action");

i.      *Graves, et al. v. Smitty's Supply, Inc., et al.*, No. 4:19-cv-05089-SRB (W.D.Mo.) ("*Graves* Action");

j.      *Feldkamp, et al. v. Smitty's Supply, Inc., et al.*, No. 2:20-cv-02177-CSB-EIL (C.D. Ill.) ("*Feldkamp* Action");

(collectively "Underlying Lawsuits").

        3.      Nationwide seeks a declaration that it owes no duty to defend or indemnify Tractor Supply with respect to the Underlying Lawsuits under any of the insurance policies at issue.

        4.      Nationwide also seeks a declaration that: (1) it owes no duty to defend or indemnify Smitty's under certain insurance policies issued to Cam2; (2) it owes no duty to defend or

indemnify Cam2 under the insurance policies issued to Smitty's from April 30, 2014 to April 30, 2018; and (3) it owes no duty to defend or indemnify Smitty's or Cam2 under the primary policies issued to Smitty's from April 30, 2018 to April 30, 2020.

5. Through this Action, Nationwide further seeks a declaration that it owes no duty to indemnify the Defendants with respect to any settlement or judgment related to Counts V – XXXIII of the MDL Action, nor any corresponding counts asserted in the remaining Underlying Lawsuits.

6. Nationwide also seeks a declaration that it owes no duty to indemnify Smitty's or Cam2 for any settlement or judgment in the Underlying Lawsuits.

7. Last, Nationwide seeks a declaration that it is entitled to reimbursement from Smitty's, Cam2, and/or Tractor Supply for the defense costs incurred under policies for which Smitty's, Cam2, and Tractor Supply are not insureds, and/or defense costs incurred for noncovered damages and or non-covered claims in the Underlying Lawsuits.

## **PARTIES**

8. Plaintiff Nationwide is an Iowa corporation with its principal place of business in Iowa.

9. Defendant Smitty's Supply, Inc. is a Louisiana corporation, with its principal place of business in Louisiana.

10. Defendant CAM2 International, LLC is a Louisiana limited liability company, with its principal place of business in Louisiana.

11. Defendant Tractor Supply Company is a Delaware corporation, with its principal place of business in Tennessee.

## JURISDICTION AND VENUE

12.     A real and justiciable controversy exists between Nationwide, and the Defendants concerning Nationwide's respective rights and obligations under the Nationwide Policies.

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     This Court has jurisdiction over the Defendants in this matter as Smitty's and Cam2 maintain their principal place of business in Louisiana and Tractor Supply operates retail stores in Louisiana.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as this matter involves the issuance of various insurance policies that were issued to an insured located in this judicial district.

## FACTUAL BACKGROUND

## I.      PROCEDURAL BACKGROUND

16.     The Underlying Plaintiffs filed the Underlying Lawsuits seeking damages allegedly arising out of the manufacture, marketing, and sale of 303 tractor hydraulic fluid ("303 Products").

17.     On September 1, 2020, a Consolidated Amended Complaint ("Amended Complaint") was filed in the MDL Action to address the claims filed in all of the Underlying Lawsuits. *See* Amended Complaint attached hereto as Exhibit A.

18.     The Amended Complaint names Allicks Excavating, Ellen Allicks, William Anderson, Roger Bias, Terry Blackmore, Samuel Blakeney, George Bollin, Kyle Boyd, Sean Buford, Steve Burgdorf, Todd Carusillo, Douglas Clough, Clinton Curry, Sawyer Dean, Daniel Denton, Kirk Egner, Kyle Feldkamp, Norman Fohne, Duane Fosdick, Patrick Gisi, Robert Gosche,

4

Arno Graves, H & S Farms, Inc., Michael Hamm, Alan Hargraves, Jeffery Harrison, Brian Hayes, Frank James, William James, Jack Kimmich, Jason Klingenberg, Justin Lemonds, Josh Lesko, Larry Wyatt Loeffler, Jacob Mabie, Kyle Minich, Ron Nash, Bryan Nelms, Matt Ortner, Ricky Peck, Mike Ping, Stanley Richardson, Wayne Rupe, Adam Sevy, Anthony Shaw, Rusty Shaw, John Sigmon, Jay Simpson, Donald Snyder, Charles Strickland, Tim Sullivan, Tracy Sullivan, Jerry Terry, Twin Mills Timber & Tie Co., Inc., Steve Upchurch, Randy Vilela, Ross Waterman, Dale Wendt, William White, Windmill Acres, Inc., Dwayne Wurth, and Terry Zornes as plaintiffs and asserts that they seek recovery on behalf of themselves as well as all others similarly situated. ("Underlying Plaintiffs").

19.    The Amended Complaint names Smitty's, Cam2, Tractor Supply, Orscheln Farm and Home, LLC d/b/a Orscheln Farm and Home ("Orscheln"), Rural King Administration, Inc., Rural King Distribution & Management, Inc., Rural King Holding Co. (collectively "Rural King"), and Atwood Distributing, LP ("Atwood") as defendants.

20.    The Amended Complaint alleges that the Underlying Plaintiffs bring this action "to redress the negligent, wrongful, unlawful, unfair, unconscionable and/or deceptive practices, acts, and/or omissions of Defendants in connection with their manufacturing, marketing, and/or sale of Smitty's/Cam2 303 Tractor Hydraulic Fluid." Exhibit A, ¶ 5.

21.    The Amended Complaint alleges that the Defendants "deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid." Exhibit A, ¶ 6.

22.     The Amended Complaint alleges that the Defendants manufactured and sold Cam2 Promax 303 Tractor Hydraulic Oil, Super S 303 Tractor Hydraulic Fluid, Super S Super Trac 303 Tractor Hydraulic Fluid, and Cam2 303 Tractor Hydraulic Oil products, which are all the same fluids. Exhibit A, ¶ 13.

23.     The Amended Complaint alleges that "the Defendants' 303 THF Products not only lacked the required lubricant and protective benefits offered to purchasers, the fluids actually exposed purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes." Exhibit A, ¶ 14.

24.     The Amended Complaint alleges that in "November 2017, because of the deceptive nature of the 303 THF Products, the failures of the 303 THF Products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture [("MDA")]. . . banned Defendants and all other manufacturers and sellers from offering these type of '303' tractor hydraulic fluid products for sale in Missouri." Exhibit A, ¶ 15.

25.     The Amended Complaint alleges that the State of Georgia and North Carolina followed suit and banned the sale of 303 Products. Exhibit A, ¶ 15.

26.     The Amended Complaint alleges that despite the ban of 303 Products in several states and increased scrutiny throughout the country, the Defendants continued to sell their 303 Products. Exhibit A, ¶16.

27.     The Amended Complaint alleges that in late 2017, Smitty's and Cam2 modified certain product labels because the photos of the equipment on the label were deceptive and misleading by removing pictures of modern equipment. Exhibit A, ¶19.

28.     The Amended Complaint alleges that "no other changes were made to the labels despite the fact that management employees at Smitty's and Cam2 knew of the deceptive and misleading representations about the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the Super S 303 and Cam2 303 labels." Exhibit A, ¶20.

29.     The Amended Complaint alleges that in October 2017, the MDA publicly stated that it had performed testing on the 303 Products and that the testing revealed that the products did not meet any manufacturers' current specifications and were underperforming to the point damage was likely to result from use. Exhibit A, ¶ 22.

30.     The Amended Complaint alleges that "Defendants continued to sell their products and concealed any internal test data and the truth about the 303 THF products at all relevant times." Exhibit A, ¶23.

31.     The Amended Complaint alleges that "Defendants falsely and deceptively labeled, marketed and offered for sale the 303 THF Products, including (1) as meeting manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 and J20A specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar." Exhibit A, ¶109.

32.     The Amended Complaint alleges that the John Deere "303" designation had been obsolete for many years because certain ingredients of the original John Deere 303 fluid had been banned since the 1970's, and thus, manufacturers have not been able to make or sell true "303" fluid for over forty years and there are no longer any specifications for 303 fluid. Exhibit A, ¶120.

33.     The Amended Complaint alleges that the Defendants knew or should have known that at the time they were marketing and selling the 303 Products, there were no specifications available for "303" tractor hydraulic fluid, and therefore, claims that the 303 Products met "303" specifications could not possibly be true and Defendants had no way to ensure the accuracy of representations that their 303 Products were in compliance with any known specifications and in fact knew their 303 Products did not meet the J20A specifications. Exhibit A, ¶120.

34.     The Amended Complaint alleges that in October 2017, the MDA notified the Defendants, by letter of its findings regarding the 303 Products and that it concluded the 303 products were mislabeled, misbranded, that the labels were deceptive and misleading and that the products were exposing equipment to increased wear and damage. Exhibit A, ¶135.

35.     The Amended Complaint alleges that "[i]n 2018, in stark contrast to the quality represented to purchasers, Smitty's knew and discussed internally that the 303 THF Products did not provide adequate wear protection and that the products could lead to excess deposit buildup inside transmissions and other parts of equipment." Exhibit A, ¶ 140.

36.     The Amended Complaint seeks certification of the following Multi-State Class of persons:

> All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in the United States at any point in time from December 1, 2013 to present, excluding purchases of Super S Supertrac 303 Tractor Hydraulic Fluid made in Missouri.

Exhibit A, ¶ 216.

37.    The Amended Complaint also seeks certification for state-specific Sub-Classes of persons. Exhibit A, ¶ 217.

38.    The Amended Complaint alleges that the Underlying Plaintiffs each assert on behalf of themselves and the Nationwide Class, and, alternatively, each state Sub-Class, the following: Count I – Negligence; Count II – Breach of Express Warranty; Count III – Breach of Implied Warranty of Merchantability; Count IV – Breach of Implied Warranty of Fitness for Particular Purpose; Count V – Unjust Enrichment; Count VI – Fraud/Misrepresentation; and Count VII – Negligent Misrepresentation.  Exhibit A, ¶ 229.

39.    The Amended Complaint also alleges the following counts on behalf of certain specifically named Underlying Plaintiffs and Sub-Classes: Count VIII – Arkansas Deceptive Trade Practices Act, § 4-88-101; Count IX – California Unfair Competition Law, California Civil Code §17200 *et seq*.; Count X—False and Misleading Advertising in Violation of California Business & Professions Code §17500 *et seq*.; Count XI – California Consumers Legal Remedies Act, California Civil Code §1750 *et seq*; Count XII – Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.; Count XIII – Connecticut Consumer Protection Act, Conn. Gen. Stat. § 42- 110g, *et seq*.; Count XIV – Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.; Count XV—Florida a Misleading Advertising Law, Fla. Stat. § 817.41; Count XVI – Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; Count XVII – Indiana Consumer Protection Act, Ind. Code § 24-5-0.5-5; Count XVIII – Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq*.; Count XIX -- Kentucky Consumer Protection Act, Ky. Rev. Stat. §367.170 (2015); Count XX – Michigan Consumer Protection Act, MCL 445.901 *et seq*.; Count XXI – Minnesota Consumer Fraud Act, Minnesota statute § 325F.67 *et*

*seq.*; Count XXII – Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010; Count XXIII – Nebraska Consumer Protection Act, Neb. Rev. St. §§59- 1601; Count XXIV – Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. St. §§ 87-301 *et seq.*; Count XXV – New York York Consumer Protection Law, N.Y.C.P.L.R. § 214, *et seq.*; Count XXVI – North Carolina Consumer Protection Act, N.C.G.S. § 75-1.1 *et seq.*; Count XXVII – Ohio Consumer Sales Practices Act ("OCSPA"), R.C. 1345.01; Count XXVIII – Oklahoma Consumer Protection Statute; Count XXIX – Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.*; Count XXX – South Dakota Consumer Protection Statute; Count XXXI – Texas Deceptive Trade Practices, Texas Business and Commerce Code § 17.41 *et seq.*; Count XXXII – West Virginia Consumer Protection Statute, W. Va. Code Ann. § 55-2-12, *et seq.*; and Count XXXIII – Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18/. Exhibit A, ¶¶. 230 – 257.

40.     Count VI – Fraudulent Misrepresentation alleges that the Defendants' representations were false and made knowingly by the Defendants, and were therefore fraudulent. Exhibit A, ¶ 295.

41.     Count VI alleges that the Defendants' representations were made with the intent that the Underlying Plaintiffs rely on such representations and despite knowing the representations were false. Exhibit A, ¶¶ 296-297.

42.     Count VII – Negligent Misrepresentation alleges that the Defendants made certain representations with the intent that the Underlying Plaintiffs rely on those representations, which were false. Exhibit A, ¶ 308

43.     Counts VIII through XXXIII allege that the Defendants violated various consumer protection statutes by engaging in acts of deception, false pretense, false promise, misrepresentations, suppression and/or concealment. Exhibit A, ¶¶ 319-640.

44.     The Amended Complaint alleges that the Individually Named Underlying Plaintiffs and Class members:

> (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Products were different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Products had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and/or (f) suffered increased and excessive wear and/or damage to their equipment, including damages to gears, seals and hydraulic systems.

Exhibit A, ¶ 206.

45.     The Amended Complaint seeks recovery of treble damages, statutory damages, injunctive relief, actual damages, punitive damages, restitution, disgorgement, and attorney's fees and costs.

## NATIONWIDE POLICIES

## I.     NATIONWIDE PRIMARY POLICIES

46.     Nationwide issued the following commercial general liability policies to Cam2:

   a.     CPP136574A, effective April 30, 2014 to April 30, 2015, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("14-15 Cam2 Primary Policy"). A true and correct copy of the 14-15 Cam2 Primary Policy with premium information redacted is attached as Exhibit B.

   b.     CPP136574A, effective April 30, 2015 to April 30, 2016, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed

Operations Aggregate, and a $2,000,000 General Aggregate ("15-16 Cam2 Primary Policy"). A true and correct copy of the 15-16 Cam2 Primary Policy with premium information redacted is attached as Exhibit C.

c.   CPP136574A, effective April 30, 2016 to April 30, 2017, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("16-17 Cam2 Primary Policy"). A true and correct copy of the 16-17 Cam2 Primary Policy with premium information redacted is attached as Exhibit D.

d.   CPP136574A, effective April 30, 2017 to April 30, 2018, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("17-18 Cam2 Primary Policy"). A true and correct copy of the 17-18 Cam2 Primary Policy with premium information redacted is attached as Exhibit E.

47.   Nationwide issued the following commercial general liability policies to Smitty's:

a.   CPP126853A, effective April 30, 2014 to April 30, 2015, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("14-15 Smitty's Primary Policy"). A true and correct copy of the 14-15 Smitty's Primary Policy with premium information redacted is attached as Exhibit F.

b.   CPP126853A, effective April 30, 2015 to April 30, 2016, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("15-16 Smitty's

Primary Policy"). A true and correct copy of the 15-16 Smitty's Primary Policy with premium information redacted is attached as Exhibit G.

c.    CPP126853A, effective April 30, 2016 to April 30, 2017, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("16-17 Smitty's Primary Policy"). A true and correct copy of the 16-17 Smitty's Primary Policy with premium information redacted is attached as Exhibit H.

d.    CPP126853A, effective April 30, 2017 to April 30, 2018, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("17-18 Smitty's Primary Policy"). A true and correct copy of the 17-18 Smitty's Primary Policy with premium information redacted is attached as Exhibit I.

e.    CPP126853A, effective April 30, 2018 to April 30, 2019, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("18-19 Smitty's Primary Policy"). A true and correct copy of the 18-19 Smitty's Primary Policy with premium information redacted is attached as Exhibit J.

f.    CPP126853A, effective April 30, 2019 to April 30, 2020, which is subject to a $1,000,000 Each Occurrence limit, a $2,000,000 Products/Completed Operations Aggregate, and a $2,000,000 General Aggregate ("19-20 Smitty's Primary Policy"). A true and correct copy of the 19-20 Smitty's Primary Policy with premium information redacted is attached as Exhibit K.

48.     The Smitty's and Cam2 Primary Policies are collectively referred to herein as "Primary Policies."

49.     By endorsement, Cam2 is also listed as a named insured on the 18-20 Smitty's Primary Policies.

50.     Tractor Supply is not listed as a Named Insured on any of the Primary Policies.

51.     Subject to all their terms, conditions, limitations, definitions, endorsements and exclusions, the Primary Policies provide "bodily injury" liability coverage, "property damage" liability coverage, and "personal injury" or "advertising injury" liability coverage.

52.     Upon information and belief, the parties hereto do not dispute that Nationwide owes no obligation to the Defendants under the "bodily injury" and "personal and advertising injury" coverages of the Primary Policies.

53.     By endorsement, the "property damage" liability coverage of the Primary Policies provides, in part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

* * *

54.     The Primary Policies further provide:

* * *

   **b.**  This insurance applies to "bodily injury" and "property damage" only if:
      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period.

      **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II ---- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

## SECTION III --- - LIMITS OF INSURANCE

**1**. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a**. Insureds;

   **b**. Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2**. The General Aggregate Limit is the most we will pay for the sum of:

   **a**. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

* * *

**5.** Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
    **a.** Damages under Coverage A; and
    **b.** Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

* * *

55.    The Primary Policies are, in part, subject to the following definitions:

**SECTION V – DEFINITIONS**

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
    **a**. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
    **b**. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:
* * *

    **f**. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
* * *

**13**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or
* * *

**17**. "Property damage" means:

16

    **a**. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b**. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21**. "Your product":

    **a**. Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b**. Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c**. Does not include vending machines or other property rented to or located for the use of others but not sold.

* * *

56.    The Primary Policies are subject to a "Who Is An Insured" provision that provides,

in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1**.  If you are designated in the Declarations as:

* * *

    **c**. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d**. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

57.     Effective June 10, 2016, an endorsement entitled "Additional Insured-Vendors" (CG 20 15 04 13) ("AI-Vendors Endorsement") was added to the 16-17 Smitty's Primary Policy.

58.     On June 2, 2016, the AI-Vendors Endorsement was added to the 16-17 Cam2 Primary Policy.

59.     The 17-18 Cam2 Primary Policy contains the AI-Vendors Endorsement.

60.     The 17-20 Smitty's Primary Policies contain the AI-Vendors Endorsement.

61.     The AI-Vendors Endorsement provides, in part, as follows:

* * *

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any person(s) or organization(s) with whom "you" have agreed in a valid written contract or written agreement, executed prior to loss, that such person(s) or organization(s) be added as an additional insured on "your" policy, as provided under this endorsement. | ALL PRODUCTS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II ---- Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

18

      **1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

      **2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

      **1.** The insurance afforded the vendor does not apply to:

          **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

          **b.** Any express warranty unauthorized by you;

          **c.** Any physical or chemical change in the product made intentionally by the vendor;

          **d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

          **e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

          **f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

* * *

          **h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

             **(1)** The exceptions contained in Subparagraphs d. or f.; or

             **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III ---- Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

      **1.** Required by the contract or agreement; or

      **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

\* \* \*

62.    The Primary Policies are, in part, subject to the following exclusions:

## 2.  Exclusions

This insurance does not apply to:

### a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

### k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any party of it.

\* \* \*

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
  (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
  (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

\* \* \*

**n. Recall Of Products, Work Or Impaired Property**
Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
  (1) "Your product";
  (2) "Your work"; or
  (3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

## II.   NATIONWIDE UMBRELLA POLICIES

63.    Nationwide issued the following commercial umbrella liability policies to Cam2:

a.    CU136574A, effective April 30, 2014 to April 30, 2015, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("14-15 Cam2 Umbrella Policy"). A true and correct copy of the 14-15 Cam2 Umbrella Policy with premium information redacted is attached as Exhibit L.

b.    CU136574A, effective April 30, 2015 to April 30, 2016, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("15-16 Cam2 Umbrella Policy"). A true and correct copy of the 15-16 Cam2 Umbrella Policy with premium information redacted is attached as Exhibit M.

21

c.    CU136574A, effective April 30, 2016 to April 30, 2017, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("16-17 Cam2 Umbrella Policy"). A true and correct copy of the 16-17 Cam2 Umbrella Policy with premium information redacted is attached as Exhibit N.

d.    CU136574A, effective April 30, 2017 to April 30, 2018, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("17-18 Cam2 Umbrella Policy"). A true and correct copy of the 17-18 Cam2 Umbrella Policy with premium information redacted is attached as Exhibit O.

64.    Nationwide issued the following commercial umbrella liability policies to Smitty's:

a.    CU126853A, effective April 30, 2014 to April 30, 2015, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("14-15 Smitty's Umbrella Policy"). A true and correct copy of the 14-15 Smitty's Umbrella Policy with premium information redacted is attached as Exhibit P.

b.    CU126853A, effective April 30, 2015 to April 30, 2016, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("15-16 Smitty's Umbrella Policy"). A true and correct copy of the 15-16 Smitty's Umbrella Policy with premium information redacted is attached as Exhibit Q.

c.    CU126853A, effective April 30, 2016 to April 30, 2017, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("16-17 Smitty's Umbrella Policy"). A true and correct copy of the 16-17 Smitty's Umbrella Policy with premium information redacted is attached as Exhibit R.

d.    CU126853A, effective April 30, 2017 to April 30, 2018, which is subject to a $2,000,000 Each Occurrence limit, and a $2,000,000 Aggregate ("17-18

Smitty's Umbrella Policy"). A true and correct copy of the 17-18 Smitty's

Umbrella Policy with premium information redacted is attached as Exhibit S.

65.     The Cam2 and Smitty's Umbrella Policies are collectively referred to herein as "Umbrella Policies."

66.     Upon information and belief, the Defendants do not dispute that Nationwide owes no obligation under the "bodily injury" and "personal and advertising injury" coverages of the Umbrella Policies.

67.     The "property damage" liability coverage afforded under the Umbrella Policies provide, in part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. We will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.

68.     The Umbrella Policies further provide as follows:

* * *

    **c.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1.a. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

\* \* \*

69. The Umbrella Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

## SECTION II – WHO IS AN INSURED

\* \* \*

**3**. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or
**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

70. The Umbrella Policies are subject to the following definitions:

## SECTION V - DEFINITIONS

\* \* \*

**8**. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

     **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

     **b**. You have failed to fulfill the terms of a contract or agreement;

     if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**18**. "Property damage" means:

     **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**19.** "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

* * *

**23**. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24**. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance."

* * *

**27.** "Your product":

     **a**. Means:

          **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

               **(a)** You;

               **(b)** Others trading under your name; or

               **(c)** A person or organization whose business or assets you have acquired; and

          **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

     **b**. Includes:

25

> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> **(2)** The providing of or failure to provide warnings or instructions.
>
> **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.
>
> \* \* \*

71. By endorsement, the Umbrella Policies define "insured contract" as follows:

"Insured contract" means

> \* \* \*
>
> **g**. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
>
> \* \* \*

72. The Umbrella Policies are subject to the following exclusions:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
> Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by

or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(**a**) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(**b**) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \*

**p. Damage To Impaired Property Or Property**

Not Physically Injured "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(**1**) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(**2**) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(**1**) "Your product";

(**2**) "Your work"; or

(**3**) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

# COUNT I
## DECLARATORY RELIEF
### Cam2 Does Not Qualify as an Insured Under the 14-18 Smitty's Primary Policies

73.     Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

74.     Cam2 is not listed as a named insured on the 14-18 Smitty's Primary Policies.

75.     The 14-18 Smitty's Primary Policies are subject to a "Who Is an Insured Provision" that states, in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\* \* \*

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

76.     Cam2 is not an "executive officer", director, or stockholder of Smitty's.

77.     Thus, Cam2 does not qualify as an insured under the 14-18 Smitty's Primary Policies.

78.     Accordingly, Nationwide does not owe any obligation to defend or indemnify Cam2 under the 14-18 Smitty's Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.   Declaring that Cam2 does not qualify as an insured under the 14-18 Smitty's Primary Policies;

b.   Declaring that Nationwide owes no duty to defend or indemnify Cam under the 14-18 Smitty's Primary Policies; and

c.   Awarding any other relief this Court deems just and proper.

<u>**COUNT II**</u>
<u>**DECLARATORY RELIEF**</u>
**Tractor Supply Does Not Qualify as an Insured Under the Smitty's Primary Policies**

79.   Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

80.   The Smitty's Primary Policies are subject to a "Who Is an Insured Provision" that states, in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.**  If you are designated in the Declarations as:

* * *

**c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d**.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

81.   Tractor Supply is not an "executive officer", director, or stockholder of Smitty's.

82.   Tractor Supply is not a member or manager of Cam2.

83.   Tractor Supply does not qualify as an insured under "Who Is An Insured" Provision contained in the Smitty's Primary Policies.

84.     The 13-15 Smitty's Primary Policies are not subject to any provision or endorsement under which Tractor Supply would qualify as an insured.

85.     Nationwide owes no obligation to defend or indemnify Tractor Supply under the 13-15 Smitty's Primary Policies on the basis that Tractor Supply does not qualify as an insured.

86.     The 16-20 Smitty's Primary Policies are subject to the AI-Vendors Endorsement that provides, in part, as follows:

* * *

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any person(s) or organization(s) with whom "you" have agreed in a valid written contract or written agreement, executed prior to loss, that such person(s) or organization(s) be added as an additional insured on "your" policy, as provided under this endorsement. | ALL PRODUCTS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. **Section II ---- Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

\* \* \*

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf . . .

\* \* \*

87.     Upon information and belief, Smitty's and Tractor Supply may have entered into a written agreement.

88.     Upon information and belief, the agreement was not executed prior to all of the loss complained of in the Underlying Lawsuits.

89.     Tractor Supply does not qualify as an additional insured under the Smitty's Primary Policies for its sole negligence.

90.     Nationwide owes no obligation to defend or indemnify Tractor Supply under the Smitty's Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.     Declaring that Tractor Supply does not qualify as an insured under the Smitty's Primary Policies;

b.     Declaring that Nationwide owes no duty to defend or indemnify Tractor Supply under the Smitty's Primary Policies; and

c.     Awarding any other relief this Court deems just and proper.

## COUNT III
## DECLARATORY RELIEF
### Tractor Supply and Cam2 Do Not Qualify as Insureds the Smitty's Umbrella Policies

91.     Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

92.     The Smitty's Umbrella Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

**SECTION II – WHO IS AN INSURED**

* * *

**3**. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or
**b**. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

* * *

93.     Tractor Supply and Cam2 do not qualify as insureds under the 14-18 Smitty's Primary Policies and thus, does not qualify as an insured under the Smitty's Umbrella Policies.

94.     Nationwide owes no obligation to Tractor Supply or Cam2 under the Smitty's Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.      Declaring that Tractor Supply or Cam2 do not qualify as insureds under the Smitty's Umbrella Policies;

b.      Declaring that Nationwide owes no obligation to Tractor Supply or Cam2 under the Smitty's Umbrella Policies;

c.      Awarding any other relief this Court deems just and proper.

**COUNT IV**
**DECLARATORY RELIEF**
**Smitty's Does Not Qualify as an Insured Under the Cam2 Primary Policies**

95.      Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

96.      The Cam2 Primary Policies are subject to a "Who Is an Insured Provision" that states, in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:
                                    * * *

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
                                    * * *

97.      Smitty's is not a member or manager of Cam2.

98.      Smitty's does not qualify as an insured under the Cam2 Primary Policies.

99.      Nationwide does not owe any obligation to defend or indemnify Smitty's under the Cam2 Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.      Declaring that Smitty's does not qualify as an insured under the Cam2 Primary Policies;

b.      Declaring that Nationwide owes no duty to defend or indemnify Smitty's under the Cam2 Primary Policies; and

c.      Awarding any other relief this Court deems just and proper.

## COUNT V
## DECLARATORY RELIEF
**Tractor Supply Does Not Qualify as an Insured Under the Cam2 Primary Policies**

100.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

101.    The Cam2 Primary Policies are subject to a "Who Is an Insured Provision" that states, in part, as follows:

**SECTION II ---- WHO IS AN INSURED**

**1.**  If you are designated in the Declarations as:

                              * * *

        **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

                              * * *

102.    Tractor Supply is not a member or manager of Cam2.

103.    Tractor Supply does not qualify as an insured under the Cam2 Primary Policies.

104.    Nationwide does not owe any obligation to defend or indemnify Tractor Supply under the Cam2 Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.      Declaring that Tractor Supply does not qualify as an insured under the Cam2 Primary Policies;

b.    Declaring that Nationwide owes no duty to defend or indemnify Tractor Supply under the Cam2 Primary Policies; and

c.    Awarding any other relief this Court deems just and proper.

**COUNT VI**
**DECLARATORY RELIEF**
**Smitty's and Tractor Supply Do Not Qualify as Insureds**
**Under the Cam2 Umbrella Policies**

105.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

106.    The Cam2 Umbrella Policies are subject to a "Who Is An Insured" provision that provides, in part, as follows:

**SECTION II – WHO IS AN INSURED**

* * *

**3.**  Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

Subject to Section **III** – Limits Of Insurance, if coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**a**.  Required by the contract or agreement, less any amounts payable by any "underlying insurance"; or
**b**.  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

* * *

107.    Tractor Supply and Smitty's do not qualify as insureds under the 14-18 Cam2 Primary Policies, and thus, does not qualify as insureds under the Cam2 Umbrella Policies.

108.    Nationwide owes no obligation to Smitty's or Tractor Supply under the Cam2 Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that Smitty's and Tractor Supply do not qualify as insureds under the Cam2 Umbrella Policies;

b. Declaring that Nationwide owes no obligation to Smitty's or Tractor Supply under the Cam2 Umbrella Policies;

c. Awarding any other relief this Court deems just and proper.

## <u>COUNT VII</u>
**No Duty to Defend or Indemnify the Defendants is Owed Under the 18-20 Smitty's Primary Policies Based on the Prior Knowledge Provisions**

109. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

110. The 18-20 Smitty's Primary Policies are subject to the following provisions:

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c**. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d**. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

111.    In October 2017, the MDA announced that it performed testing on the 303 Products which revealed that the products did not meet any manufacturers' current tractor hydraulic fluid specifications and were underperforming to the point damage was likely to result from use.

112.    In October 2017, the MDA issued letters to the Defendants informing them of the results of their testing on the 303 Products and that it concluded that the 303 Products were mislabeled, misbranded, that the labels were deceptive and misleading and that the products were potentially exposing equipment to increased wear and damage.

113.    In November 2017, the MDA issued a stop sale banning the sale of the 303 Products in the State of Missouri.

114.    On August 12, 2018, a stop sale banning the sale of the 303 Products in the State of Georgia was issued.

115.    On February 17, 2019, a stop sale banning the sale of the 303 Products in the State of North Carolina was issued.

116.    The Defendants knew of the "property damage" complained of prior to the inception of the 18-20 Primary Policies.

117.    Nationwide owes no obligation to defend or indemnify the Defendants under the 18-20 Smitty's Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that the Knowledge Provisions apply to preclude coverage under the 18-20 Smitty's Primary Policies;

b. Declaring that Nationwide owes no duty to defend or indemnify the Defendants under the 18-20 Smitty's Primary Policies; and

c. Awarding any other relief this Court deems just and proper.

<u>COUNT VIII</u>
**No Duty to Defend or Indemnify the Defendants is Owed Under the 18-20 Smitty's Primary Policies Based on Doctrines of Fortuity, Loss In Progress and Known Risk**

118.	Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

119.	The fortuity doctrine combines the principles of "known risk" and "loss in progress" and holds that insurance coverage is precluded where the insured is aware of an ongoing progressive or known risk at the time the policy is purchased.

120.	In October 2017, the MDA announced that it performed testing on the 303 Products, which revealed that the products were underperforming to the point damage was likely to result from use.

121.	In October 2017, the MDA issued letters to the Defendants informing them of the results of their testing on the 303 Products and that it concluded that the 303 Products were mislabeled, misbranded, that the labels were deceptive and misleading and that the products were potentially exposing equipment to increased wear and damage.

122.	In November 2017, the MDA issued a stop sale banning the sale of the 303 Products in the State of Missouri.

123.	On August 12, 2018, a stop sale banning the sale of the 303 Products in the State of Georgia was issued.

124. On February 17, 2019, a stop sale banning the sale of the 303 Products in the State of North Carolina was issued.

125. The Defendants knew that the 303 Products were defective prior to the inception of the 18-20 Smitty's Primary Policies.

126. Nationwide owes no obligation to defend or indemnify the Defendants under the 18-20 Smitty's Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

    a. Declaring that the Known Risk, Fortuity and/or Loss in Progress doctrines apply to preclude coverage under the 18-20 Smitty's Primary Policies;

    b. Declaring that Nationwide owes no duty to defend or indemnify the Defendants under the 18-20 Smitty's Primary Policies; and

    c. Awarding any other relief this Court deems just and proper.

## COUNT IX
### No Duty to Indemnify the Defendants is Owed Under the 14-18 Primary Policies Based on Doctrines of Fortuity, Loss In Progress and Known Risk

127. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

128. The fortuity doctrine combines the principals of "known risk" and "loss in progress" and holds that insurance coverage is precluded where the insured is aware of an ongoing progressive or known risk at the time the policy is purchased.

129. Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Smitty's Primary Policies.

130. Cam2 knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Cam2 Primary Policies and the 18-20 Smitty's Primary Policies.

131. Nationwide owes no obligation to indemnify the Defendants under the 14-18 Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that the Known Risk, Fortuity and/or loss in progress doctrines apply to preclude coverage under the 14-18 Primary Policies;

b.    Declaring that Nationwide owes no duty to indemnify the Defendants under the 14-18 Primary Policies; and

c.    Awarding any other relief this Court deems just and proper.

## COUNT X
### No Duty to Indemnify the Defendants is Owed Under the 14-18 Umbrella Policies Based on Doctrines of Fortuity, Loss In Progress and Known Risk

132. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

133. The fortuity doctrine combines the principals of "known risk" and "loss in progress" and holds that insurance coverage is precluded where the insured is aware of an ongoing progressive or known risk at the time the policy is purchased.

134. Upon information and belief, Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Smitty's Umbrella Policies.

135. Upon information and belief, Cam2 knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Cam2 Umbrella Policies.

136. Nationwide owes no obligation to indemnify the Defendants under the 14-18 Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that the Known Risk, Fortuity and/or Loss in Progress doctrines apply to preclude coverage under the 14-18 Umbrella Policies;

b. Declaring that Nationwide owes no duty to indemnify the Defendants under the 14-18 Umbrella Policies; and

c. Awarding any other relief this Court deems just and proper.

### COUNT XI
**Damages Attributable to Count V of the MDL Action Do Not Constitute Damages Because of "Property Damage"**

137. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

138. The "property damage" liability coverage of the Primary Policies provides that Nationwide will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage."

139. The Primary Policies define "property damage" as follows:

**17.** "Property damage" means:
  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

41

     **b**. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

140.    Count V of the MDL Action solely seeks recovery for economic damages, restitution and/or disgorgement of profits.

141.    Economic damages, restitution and/or disgorgement of profits do not constitute damages because of "property damage."

142.    Nationwide does not owe any obligation to indemnify the Defendants under the Primary Policies for any damages attributable to Count V of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

    a.    Declaring that the Count V of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits, does not seek damages because of "property damage;"

    b.    Declaring that Nationwide owes no duty to indemnify the Defendants under the Primary Policies for any damages attributable to Count V of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits; and

    c.    Awarding any other relief this Court deems just and proper.

**<u>COUNT XII</u>**
**Damages Attributable to Count V of the MDL Do Not Constitute Damages Because of "Property Damage" as Defined Under Umbrella Policies**

143.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

42

144. Coverage under the Umbrella Policies only applies to "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

145. The Umbrella Policies define "property damage" as follows:

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

146. Count V of the MDL Action solely seeks recovery for economic damages, restitution and/or disgorgement of profits.

147. Economic damages, restitution and/or disgorgement of profits do not constitute damages because of "property damage."

148. Nationwide does not owe any obligation to indemnify the Defendants under the Umbrella Policies for any damages attributable to Count V of the MDL, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

    a. Declaring that the Count V of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits, does not seek damages because of "property damage";

    b. Declaring that Nationwide owes no duty to indemnify the Defendants under the Umbrella Policies for any damages attributable to the Count V of the MDL Action,

or any corresponding counts asserting the same cause of action in the remaining

Underlying Lawsuits; and

c.    Awarding any other relief this Court deems just and proper.

### COUNT XIII
### Damages Attributable to Counts V-XXXIII Do Not Constitute Damages Because of "Property Damage" Caused by an "Occurrence" under the Primary Policies

149.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

150.    The "property damage" liability coverage of the Primary Policies provides that Nationwide will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence."

151.    The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

152.    Count V of the MDL Action alleges that the Defendants obtained certain benefits under false pretenses because of the Defendants' concealments, misrepresentations, and other deceptive, misleading and unfair conduct relating to the 303 Products.

153.    Counts VIII through XXXIII of the MDL Action allege that the Defendants violated various consumer protection statutes by engaging in acts of deception, false pretense, false promise, misrepresentations, suppression and/or concealment.

154.    Counts V through XXXIII of the MDL Action do not allege an accident.

155.    Nationwide does not owe any obligation to indemnify the Defendants under the Primary Policies for any damages attributable to Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits.

44

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits, do not seek damages because of "property damage" caused by an "occurrence;"

b. Declaring that Nationwide owes no duty to indemnify the Defendants for any damages attributable to Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits under the Primary Policies; and

c. Awarding any other relief this Court deems just and proper.

## COUNT XIV
**Damages Attributable to Counts V-XXXIII Do Not Constitute Damages Because of "Property Damage" Caused by an "Occurrence" Under the Umbrella Policies**

156. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

157. Coverage under the Umbrella Policies only applies to "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

158. The Umbrella Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

159. Count V of the MDL Action alleges that the Defendants obtained certain benefits under false pretenses because of the Defendants' concealments, misrepresentations, and other deceptive, misleading and unfair conduct relating to the 303 Products.

45

160.    Counts VIII through XXXIII of the MDL Action allege that the Defendants violated various consumer protection statutes by engaging in acts of deception, false pretense, false promise, misrepresentations, suppression and/or concealment.

161.    Counts V through XXXIII of the MDL Action do not allege an accident.

162.    Nationwide does not owe any obligation to indemnify the Defendants for any damages attributable to Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits under the Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits, do not seek damages because of "property damage" caused by an "occurrence;"

b.    Declaring that Nationwide owes no duty to indemnify the Defendants under the Umbrella Policies for any damages attributable to Counts V through XXXIII of the MDL Action, or any corresponding counts asserting the same cause of action in the remaining Underlying Lawsuits, and

c.    Awarding any other relief this Court deems just and proper.

## COUNT XV
### No Obligation to Indemnify
### the Defendants under the Primary Policies Is Owed for Any Sums That Do Not Constitute Damages Because of "Property Damage" Caused By An "Occurrence" During the Policy Period of the Primary Policies

163.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

164.    The "property damage" liability coverage of the Primary Policies provides that Nationwide will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" during the policy period.

165.    The Primary Policies define "property damage" as follows:

**17**. "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

166.    The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

167.    Damages arising from reimbursement to consumers for a product that failed to meet its specifications do not qualify as "property damage".

168.    The alleged damages in the Underlying Lawsuits were not caused by an accident.

169.    The Underlying Lawsuits arise from the sale of 303 Products from December 1, 2013 to Present.

170.    Nationwide does not owe any obligation to indemnify the Defendants for any sums that do not constitute damages because of "property damage" caused by an "occurrence" during the policy period of the Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that sums paid to reimburse Underlying Plaintiffs for cost of 303 Products do not constitute damages of "property damage";

b.    Declaring that Nationwide owes no duty to indemnify the Defendants for any damages that do not constitute damages because of "property damage" caused by an "occurrence" during the policy periods; and

c.    Awarding any other relief this Court deems just and proper.

**COUNT XVI**
**DECLARATORY RELIEF**
**No Obligation to Indemnify is Owed Under the Umbrella Policies for Any Sums That Does Not Seek Damages Because of "Property Damage" Caused by an "Occurrence" During Policy Period**

171.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

172.    Coverage under the Umbrella Policies only applies to "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

173.    "Retained limit" is defined to include the available limits of "underlying insurance" scheduled in the Declarations.

174.    The 14-18 Smitty's Primary Policies each constitute "underlying insurance" for the Smitty's Umbrella Policy that possesses the same policy period.

175.    The 14-18 Cam2 Primary Policies each constitute "underlying insurance" for the Cam2 Umbrella Policy that possesses the same policy period.

176.    The limits of the 14-18 Primary Policies have not been exhausted.

177.    The Umbrella Policies define "property damage" and "occurrence" as follows:

**13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**18**. "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

178.    Damages arising from reimbursement to consumers for a product that failed to meet its specifications do not qualify as "property damage".

179.    The alleged damages in the Underlying Lawsuits were not caused by an accident.

180.    The Underlying Lawsuit arises from the sale of the 303 Products from December 1, 2013 to Present.

181.    Nationwide does not owe any obligation to indemnify the Defendants under the Umbrella Policies for any sums that do not constitute "ultimate net loss" in excess of the "retained limit" because of "property damage" caused by an "occurrence" during the policy period.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that sums paid to reimburse Underlying Plaintiffs for cost of 303 Products do not constitute damages of "property damage;"

b.    Declaring that Nationwide owes no duty to indemnify the Defendants for any damages that do not constitute damages because of "property damage" caused by an "occurrence" during the policy periods under the Umbrella Policies; and

c.    Awarding any other relief this Court deems just and proper.

## COUNT XVII
## DECLARATORY RELIEF
**The Your Product, Impaired Property and Product Recall Exclusions Preclude Coverage Under the Primary Policies for Reimbursement of the Cost of the Defendants' Products**

182.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

183.    The Primary Policies are subject to exclusions that provide, in part, as follows:

### 2. Exclusions

This insurance does not apply to:

\* \* \*

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any party of it.

\* \* \*

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

\* \* \*

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
**(1)** "Your product";
**(2)** "Your work"; or
**(3)** "Impaired property";
If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

184.     The Underlying Lawsuits, in part, seek reimbursement of the price they paid for the defective 303 Products.

185.     The Your Product, Impaired Property and Product Recall Exclusions preclude coverage for the reimbursement or replacement of the insured's defective product.

186.     Nationwide owes no obligation to indemnify the Defendants under the Primary Policies for any sums that compensate the Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 Products or for any other sums that fall withing the scope of the Your Product, Impaired Property or Product Recall Exclusions.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.     Declaring that sums paid to reimburse Underlying Plaintiffs for cost of 303 Products are precluded from coverage under the Your Product, Impaired Property and/or Product Recall Exclusion;

b.     Declaring that Nationwide owes no duty to indemnify the Defendants for any sums paid to reimburse Underlying Plaintiffs for cost of 303 Products under the Primary Policies; and

c.     Awarding any other relief this Court deems just and proper.

**COUNT XVIII**
**DECLARATORY RELIEF**
**The Your Product, Impaired Property, and Product Recall Exclusions Preclude Coverage Under the Umbrella Policies for Any Sums Attributable to the Reimbursement of the Cost of the Defendants' Product**

187.     Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

188.     The Umbrella Policies are subject to the following exclusions:

**2. Exclusions**

This insurance does not apply to:

* * *

**n. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**p. Damage To Impaired Property Or Property**

Not Physically Injured "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**q. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

* * *

189.     The Underlying Lawsuits, in part, seek reimbursement of the price they paid for the defective 303 Product.

190.     The Your Product, Impaired Property and Product Recall Exclusions preclude coverage for the reimbursement or replacement of the insured's defective product.

191.    Nationwide owes no obligation to indemnify the Defendants under the Umbrella Policies for any sums that that compensates the Underlying Plaintiffs for the reimbursement or replacement of the complained of 303 Products or for any other sums that fall withing the scope of the Your Product, Impaired Property or Product Recall Exclusions.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that sums paid to reimburse Underlying Plaintiffs for the purchase of 303 Products are precluded from coverage under the Umbrella Policies' Your Product, Impaired Property and/or Product Recall Exclusions;

b.    Declaring that Nationwide owes no duty to indemnify the Defendants for any sums paid to reimburse Underlying Plaintiffs for the purchase of 303 Products under the Umbrella Policies; and

c.    Awarding any other relief this Court deems just and proper.

## COUNT XIX
## DECLARATORY RELIEF
**The Expected or Intended Injury Exclusion Applies to Preclude Coverage for Smitty's and Cam2 Under the Primary Policies**

192.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

193.    The Primary Policies are subject to the following exclusion:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

194.    Upon information and belief, Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Smitty's Primary Policies.

195.    Upon information and belief, Cam2 knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Cam2 Primary Policies and the 18-20 Smitty's Primary Policies.

196.    Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Cam2 for the Underlying Lawsuits.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.    Declaring that Nationwide owes no duty to indemnify Smitty's and Cam2 because the Expected or Intended Injury Exclusion applies to preclude coverage; and

b.    Awarding any other relief this Court deems just and proper.

## COUNT XX
## DECLARATORY RELIEF
**The Expected or Intended Injury Exclusion Precludes Coverage for Smitty's and Cam2 Under the Umbrella Policies**

197.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

198.    The Umbrella Policies are subject to the following exclusion:

**2.  Exclusions**

This insurance does not apply to:

## a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

199.   Smitty's knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Smitty's Umbrella Policies.

200.   Cam2 knew that the 303 Products were defective and that such would result in "property damage" to consumers prior to the inception of the Cam2 Umbrella Policies.

201.   Accordingly, Nationwide does not owe any obligation to indemnify Smitty's or Cam2 for the Underlying Lawsuits under the Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.      Declaring that Nationwide owes no duty to indemnify Smitty's and Cam2 under the Umbrella Policies because the Expected or Intended Injury Exclusion applies to preclude coverage; and

b.      Awarding any other relief this Court deems just and proper.

## COUNT XXI
## DECLARATORY RELIEF
### Alternatively, the Underlying Lawsuits only involved a single "occurrence"

202.   Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

203.   Alternatively, even if the Underlying Lawsuits involve damages, because of "property damage" caused by an "occurrence," the Underlying Lawsuits only involve a single "occurrence" and only implicate one "occurrence" limit.

204. The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

205. The Primary Policies state as follows:

**SECTION III --- - LIMITS OF INSURANCE**

**1**. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
  **a**. Insureds;
  **b**. Claims made or "suits" brought; or
  **c**. Persons or organizations making claims or bringing "suits".

**2**. The General Aggregate Limit is the most we will pay for the sum of:
  **a**. Medical expenses under Coverage C;
  **b**. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
  **c**. Damages under Coverage B.

**3**. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

\* \* \*

**5**. Subject to Paragraph 2. Or 3. Above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
  **a**. Damages under Coverage A; and
  **b**. Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

206. Upon information and belief, all of the 303 Products complained of in the Underlying Lawsuits were manufactured at the same facility.

207. All of the complained of damage was allegedly caused by Smitty's and Cam2's production of defective tractor hydraulic fluid.

208. Accordingly, the Underlying Lawsuits only involve a single "occurrence."

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that the Underlying Lawsuits only involve a single "occurrence;"

b. Declaring that only a single each "occurrence" limit applies; and

56

c.     Awarding any other relief this Court deems just and proper.

**COUNT XXII**
**DECLARATORY RELIEF**
**The Contractual Liability Exclusion Applies to Preclude Coverage for Any Contractual
Indemnity Owed by Smitty's to Tractor Supply**

209.     Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

210.     The Smitty's Primary Policies are subject to the following exclusion:

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(**1**) That the insured would have in the absence of the contract or agreement; or

 (**2**) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(**a**) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(**b**) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

211.     Assuming a valid contract exists between Smitty's and Tractor Supply, the Contractual Liability Exclusion would apply to preclude coverage for any Contractual Indemnity that Smitty's may owe to Tractor Supply under the Smitty's Primary Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that the Contractual Liability Exclusion precludes coverage for any Contractual Indemnity that may be owed by Smitty's to Tractor Supply under Smitty's Primary Policies; and

b. Awarding any other relief this Court deems just and proper.

## COUNT XXIII
## DECLARATORY RELIEF
**The Contractual Liability Exclusion Precludes Coverage Under the Smitty's Umbrella Policies for Any Contractual Indemnity Owed by Smitty's to Tractor Supply**

212. Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

213. The Smitty's Umbrella Policies are subject to the following exclusion:

**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or
**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
* * *

214. Assuming a valid contract exists between Smitty's and Tractor Supply, the Contractual Liability Exclusion would apply to preclude coverage for any Contractual Indemnity that Smitty's may owe to Tractor Supply under the Smitty's Umbrella Policies.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a.     Declaring that the Contractual Liability Exclusion precludes coverage for any Contractual Indemnity that may be owed by Smitty's to Tractor Supply under Smitty's Umbrella Policies; and

b.     Awarding any other relief this Court deems just and proper.

## COUNT XXIV
## DECLARATORY RELIEF
### Nationwide is entitled to Reimbursement of Defense Costs

215.    Nationwide incorporates and restates the allegations of paragraph 1 through 72 above as if fully set forth herein.

216.    Nationwide has been defending Smitty's, Cam2, and Tractor Supply in the MDL Action pursuant to a full reservation of rights.

217.    Nationwide only owes an obligation to defend Smitty's, Cam2, and Tractor Supply under policies in which they qualify as an insured and only for covered claims.

218.    In its reservation of rights letter Smitty's, Cam2, and Tractor Supply, Nationwide specifically reserved the right to seek reimbursement of costs incurred in the defense of claims for which Smitty's Cam2, and Tractor Supply do not qualify as an insured and for non-covered claims.

219.    In the event it is determined that no duty to defend the Underlying Lawsuits is owed, or no duty to defend specific counts or damages, or for specific policy years, Nationwide in entitled to reimbursement for the defense costs expended to defend Smitty's, Cam2, and/or Tractor Supply.

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants as follows:

a. Declaring that Nationwide is entitled to reimbursement from Smitty's, Cam2, and Tractor Supply for the defense costs incurred under policies for which Smitty's, Cam2, and Tractor Supply do not qualify as insureds;

b. Declaring that Nationwide is entitled to reimbursement from Smitty's, Cam2, and Tractor Supply for the defense costs incurred for damages and or non-covered claims in MDL Action; and

c. Awarding any other relief this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, requests that this Honorable Court enter an order in its favor and against the Defendants:

a. declaring it owes no duty to defend or indemnify Tractor Supply in the Underlying Lawsuits;

b. declaring that Nationwide owes no duty to defend or indemnify Smitty's under the Cam2 Policies;

c. declaring that Nationwide owes no duty to defend or indemnify Cam2 under the 14-18 Smitty's Policies;

c. declaring Nationwide owes no duty to defend or indemnify Smitty's, Cam2, or Tractor Supply with respect to the Underlying Lawsuits under the 18-20 Smitty's Primary Policies;

d. declaring Nationwide owes no duty to indemnify the Defendants with respect to any settlement or judgment related to Counts V – XXXIII of the MDL Action, nor any corresponding counts asserted in the remaining Underlying Lawsuits;

e.      declaring Nationwide owes no duty to indemnify Smitty's or Cam2 for any settlement or judgment in the Underlying Lawsuits;

f.      for reimbursement of defense expenses incurred under policies in which Defendants are not insureds, or in the defense of relating to uncovered damages and/or claims;

g.      costs incurred in this action; and

h.      for all other relief this Court deems necessary and just.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:     */s/ Jay Russell Sever*
        Jay Russell Sever (Bar #23935)
        Canal Place | 365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130-6534
        Telephone: 504-566-1311
        Telecopier: 504-568-9130
        Email: jay.sever@phelps.com

**ATTORNEYS FOR NATIONWIDE**
**AGRIBUSINESS INSURANCE COMPANY**